**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE PLAINTIFFS 1-13, et al., Plaintiffs, | No. 5:26-cv-04120-JLS |
| v. | |
| LANCASTER COUNTRY DAY SCHOOL, et al., Defendants. | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
**BY LANCASTER COUNTRY DAY SCHOOL**

The Complaint's predicate is the assertion that Lancaster Country Day School (LCDS) was aware in November 2023 that Defendant W.D. was creating pornographic images of his female classmates and withheld that information from law enforcement until mid-2024.

That assertion is false.

LCDS received an anonymous tip from the Safe2Say Something Program in November 2023. The tip did not identify the tipster or name a victim, and it only identified a single student: W.D. The tip *did not* come to LCDS from the unnamed tipster but rather from the Pennsylvania Office of Attorney General. 24 P.S. § 13-1303-D(b). Under the statute creating the Safe2Say Something Program, the Office of Attorney General is a "law enforcement agency." 24 P.S. § 13-1302-D. That makes sense as, under the Pennsylvania Constitution, the Attorney General is the "chief law officer of the Commonwealth." Pa. Const. art. IV, § 4.1. So, let us repeat and emphasize the above: *the first person to receive the tip was a law enforcement official*—not anyone at LCDS.

That first recipient of the tip, a representative of the highest law enforcement officer in the Commonwealth, did not refer the tip to a 911 center or the Pennsylvania State Police as authorized under the Safe2Say Program. 24 P.S. § 13-1303-D(c)(2). Instead, that employee of the Attorney General's Office dispatched the tip to teachers and administrators at LCDS. 24 P.S. § 13-1303-D(c)(6). These are the same teachers and administrators the Attorney General was statutorily tasked with training about the Program. 24 P.S. § 1303-1303-D(c)(7) & (9).[1] To examine the tip, LCDS had no warrant power, no subpoena power, no grand jury power, nor a legion of attorneys and sworn law enforcement officers at its disposal; it also did not have statutory jurisdiction to institute criminal proceedings. 18 Pa.C.S. § 6312(f.1)(2). Notably, in sending the anonymous tip to LCDS, the Attorney General's Office concluded the tip posed neither an imminent threat of violence nor an imminent threat of criminal activity. 24 P.S. § 13-1303-D(c)(2) & (6).

Two LCDS representatives, both mothers of minor children, looked into the tip as best as their educator training allowed by interviewing W.D. Separately, one of them interviewed his mother. W.D. denied the substance of the anonymous tip and his mother had no additional information. Then, left with no tangible evidence and no identified witnesses or victims, LCDS reported the results of the inquiry

---

[1] In 2025, in recognition of the deficits in the Safe2Say Program, the General Assembly further amended the statute to make it clearer still that the Attorney General is responsible for training school officials. The General Assembly did so by adding a provision stating the Attorney General must "develop a training program for school personnel on the program which, at a minimum, should include training on receiving, responding to and disposing of a report." 24 P.S. § 13-1303-D(c)(11) (added by Act 47 of 2025, effective January 12, 2026).

back to the Attorney General. In turn, the Attorney General did not send any follow up guidance to LCDS or direct LCDS to report to *another* law enforcement agency, and the inquiry ended. Thus, the Office of Attorney General—a law enforcement agency—had the tip first and had the tip last.

LCDS's report back to the Attorney General in 2023 was the last time it heard of the matter until May 2024. Then, witnesses, students, and their parents came forward for the first time. Local law enforcement thereafter used their criminal investigation tools, including warrants, to fully expose the extent of the felonious wrongdoing by W.D. and a previously unknown confederate in N.S. (he was not mentioned in the original anonymous tip).

What W.D. and N.S. did to these students is heartbreaking and saddening. LCDS did not know of and did not participate in a coverup. LCDS was not an intentional conspirator or a willing participant in the exploitation by W.D. and N.S. The Attorney General's Office received an anonymous tip, sent that tip to LCDS, LCDS investigated it, and LCDS sent the full results back to the Attorney General. While the entire LCDS community is outraged by the conduct of W.D. and N.S., that LCDS was unable to uncover off campus, online crimes without criminal investigatory tools is not a surprise and does not create civil liability.

## I. BACKGROUND

### A. Facts

LCDS is a private preschool through 12th grade school located in Lancaster, Pennsylvania. Compl. at ¶ 8.[2] Student Plaintiffs are all current and/or former students at LCDS; their parents are the Parent Plaintiffs. Compl. at ¶¶ 6, 7. Defendants W.D. and M.S. are former LCDS students. Compl. at ¶¶ 10-11. Their respective sets of parents, B.D. and D.D. (parents of W.D.), and K.S. and W.S. (parents of N.S.), are also named as Defendants. Compl. at ¶¶ 10-11.

In November 2023, LCDS received an anonymous tip from the Pennsylvania Office of Attorney General via the Safe2Say Something Program, an anonymous tip reporting system operated by the Attorney General. Compl. at ¶¶ 19, 24. The anonymous tip the Attorney General sent to LCDS reported a student, W.D., had nude images of classmates, generated using artificial intelligence. Compl. at ¶¶ 22, 24. LCDS investigated the tip by questioning the identified student, who denied the allegation. Compl. at ¶ 26. During its investigation, LCDS did not know the name of the tipster nor did it have any of the alleged images described in the tip (only the perpetrators—and later, police—ever possessed the images). Compl. at ¶¶ 24, 31, 37.

In May 2024, the Manheim Township Police received a report from a parent at LCDS that a student at LCDS may be distributing inappropriate photos. Compl.

---

[2] The pending Motion is under Fed.R.Civ.P. 12(b)(6), thus the facts are from the Complaint and are assumed true solely for purposes of the motion. *See Moliere v. Wilson*, No. 23-cv-4925, 2024 WL 2817559, at *1 (E.D. Pa. June 3, 2024) (Schmehl, J.).

at ¶ 33. That police investigation yielded evidence that W.D. and N.S. created 350 sexually explicit deepfake images of at least fifty-nine minor girls, including Student Plaintiffs, using AI image-generation technology. Compl. at ¶ 1. The images contained the real faces of Student Plaintiffs and computer generated nude female bodies. Compl. at ¶ 1. W.D. and N.S. created the images online and shared the images with each other, via the internet, using Discord. Compl. at ¶¶ 22-23. The Complaint does not allege that W.D. and N.S. created or shared the images in or at LCDS. Compl. at ¶¶ 22-23, 37.

Student Plaintiffs saw the images for the first time in late 2024, when police shared the images with them at the police department. Compl. at ¶ 37. Student Plaintiffs did not see the images at LCDS. Compl. at ¶ 37. As a result of the police investigation, in March 2025 W.D. and N.S. pleaded guilty to fifty-nine felony counts of sexual abuse of children. Compl. at ¶ 38.

**B. Procedural history**

On June 15, 2026, Student Plaintiffs and Parent Plaintiffs filed the Complaint. Doc. 1. Plaintiffs named as Defendants LCDS, as well as W.D., his parents B.D. and D.D., N.S., his parents K.S. and W.S., and John Doe AI Companies 1-10. Compl. at ¶¶ 8-12. The Complaint contains fourteen counts, eight of which are lodged against LCDS. The counts against LCDS are:

- Count VI: negligence (Student Plaintiffs v. LCDS), Compl. at ¶¶ 66-69;
- Count VII: negligent infliction of emotion distress (NIED) (Student Plaintiff v. LCDS), Compl. at ¶¶ 70-75;
- Count VIII: negligence per se (Student Plaintiffs v. LCDS), Compl. at ¶¶ 76-81;

- Count IX: violation of Title IX (Student Plaintiffs v. LCDS), Compl. at ¶¶ 82-90;
- Count X: civil liability under 18 U.S.C. § 2255 (Student Plaintiffs v. LCDS and John Doe AI Companies 1-10), Compl. at ¶¶ 91-95;
- Count XII: negligence (Parent Plaintiffs v. LCDS), Compl. at ¶¶ 101-106,
- Count XIII: negligence per se (Parent Plaintiffs v. LCDS), Compl. at ¶¶ 107-113; and
- Count XIV: NIED (Parent Plaintiffs v. LCDS), Compl. at ¶¶ 114-120.

LCDS has filed a Motion to Dismiss under Fed.R.Civ.P. 12(b)(6). This Brief is filed in support of the Motion.

## II. ARGUMENT

### A. The Court should dismiss the negligence per se claims in Counts VIII & XIII because no reportable event is alleged in the Complaint.

Where a Pennsylvania statute creates a duty, a defendant's violation of that statute can create civil liability under a negligence per se theory. *See J.E.J. v. Tri-Cnty. Big Bros./Big Sisters, Inc.*, 692 A.2d 582, 585 (Pa. Super. 1997). In certain circumstances, a violation of the mandatory reporting provision of the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6311, can be the basis for a negligence per se claim. *See J.E.J.*, 692 A.2d at 585; *see also Hartz v. Diocese of Greensburg*, 94 F. App'x 52, 54 (3d Cir. 2004). One of the predicate showings of such a claim, however, is an alleged violation of the relevant statute. *See Hartz*, 94 F. App'x at 55 (affirming dismissal of negligence per se claim based on alleged CPSL violation where defendant-clergy were not mandated reporters at time of abuse). The negligence per se claims by Student Plaintiffs and Parent Plaintiffs fail because they have not pleaded a violation of the CPSL. *See* Compl. at ¶¶ 77, 108.

To illuminate, Section 6311 requires a report where "the mandated reporter has reasonable cause to suspect that a child is a victim of child abuse[.]" § 6311(b)(1). A "child" is a defined term, meaning an "individual under 18 years of age." 23 Pa.C.S. § 6303. Likewise, "child abuse" is a defined term. 23 Pa.C.S. § 6303(b.1). As is material, however, child abuse "*does not* include any conduct for which an exclusion is provided in section 6304 (relating to exclusions from child abuse)." § 6303(d) (emphasis added). In turn, Section 6304 sets forth various exclusions and states, in relevant part, "[h]arm or injury to a child that results from the act of *another child* shall not constitute child abuse unless the child who caused the harm or injury is a perpetrator." 23 Pa.C.S. § 6304(f)(1) (emphasis added).[3] The child-on-child exception itself has an exception (the exception to the exception),

---

[3] "Perpetrator" is a defined term and means:

(i) A parent of the child.
(ii) A spouse or former spouse of the child's parent.
(iii) A paramour or former paramour of the child's parent.
(iv) A person 14 years of age or older and responsible for the child's welfare or having direct contact with children as an employee of child-care services, a school or through a program, activity or service.
(v) An individual 14 years of age or older who resides in the same home as the child.
(vi) An individual 18 years of age or older who does not reside in the same home as the child but is related within the third degree of consanguinity or affinity by birth or adoption to the child.
(vii) An individual 18 years of age or older who engages a child in severe forms of trafficking in persons or sex trafficking, as those terms are defined under section 103 of the Trafficking Victims Protection Act of 2000 (114 Stat. 1466, 22 U.S.C. § 7102).

23 Pa.C.S. § 6303. Plaintiffs have not alleged that either W.D. or N.S. were a "perpetrator," as defined.

which turns the child-on-child conduct into reportable abuse where it constitutes any of the following crimes:

> (A) rape as defined in 18 Pa.C.S. § 3121 (relating to rape);
>
> (B) involuntary deviate sexual intercourse as defined in 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse);
>
> (C) sexual assault as defined in 18 Pa.C.S. § 3124.1 (relating to sexual assault);
>
> (D) aggravated indecent assault as defined in 18 Pa.C.S. § 3125 (relating to aggravated indecent assault);
>
> (E) indecent assault as defined in 18 Pa.C.S. § 3126 (relating to indecent assault); and
>
> (F) indecent exposure as defined in 18 Pa.C.S. § 3127 (relating to indecent exposure).

23 Pa.C.S. § 6304(f)(2).

Against the foregoing, Plaintiffs have not alleged a violation of Section 6311. Plaintiffs allege W.D. and N.S. are both minors, *see* Compl. at ¶¶ 10-11, meaning each is a "child" under the CPSL. *See* 23 Pa.C.S. § 6303. The wrongful conduct stated is the creation and dissemination of AI-generated child pornography by children (W.D. and N.S.) of other children (Student Plaintiffs). *See, e.g.*, Compl. at ¶ 1. This is child-on-child misconduct falling squarely within the exception in Section 6304. *See* 23 Pa.C.S. § 6304(f)(1). And none of the exceptions to the exception apply because Plaintiffs have not alleged any facts showing one of the enumerated crimes was committed. *See* 23 Pa.C.S. § 6304(f)(2)(i). In fact, a bill is presently pending in the Pennsylvania General Assembly—House Bill 2474 (PN 3323)—that fully demonstrates that the child on child conduct alleged in the

Complaint is *not* presently within the exceptions to the exceptions. *See* HB 2474 (PN 3323), Pa. General Assembly, 2025-2026 Regular Session, *available at* https://www.palegis.us/legislation/bills/2025/hb2474. Under HB 2474, the unlawful dissemination of intimate images, as defined in 18 Pa.C.S. § 3131, and the sexual abuse of children, as defined in 18 Pa.C.S. § 6312, would be added to the exceptions to the exceptions in Section 6304 to make such conduct by a child subject to a mandatory report. HB 2474 is not yet Pennsylvania law. Finally, Plaintiffs have not alleged that LCDS—or any of its staff—were charged with any failure to report crimes under Section 6311. They could not so allege because Section 6311 was not violated by LCDS.[4]

In sum, because Plaintiffs have not alleged a violation of Section 6311, they have not stated a viable negligence per se claim. *See Hartz*, 94 F. App'x at 55. Therefore, the Court should dismiss Counts VIII and XIII.

---

[4] Lancaster County District Attorney Heather Adams concluded, consistent with the analysis above, that the matter involved child on child misconduct, and thus was not subject to a mandatory report. *See* Ashley Stalnecker, *Bill to close loophole in mandatory reporting law on AI sex abuse material moves to Senate*, LNP | LancasterOnline (May 6, 2026) ("The law has different rules on reporting child abuse when the perpetrator and victims are minors. In such situations, the law states that it is not an offense necessitating a ChildLine report unless the perpetrator committed one or more crimes outlined in the statute on mandated reporters. …. Lancaster County District Attorney Heather Adams did not charge Country Day administrators for failing to report the AI-generated content, because possession and dissemination of AI pornography did not fall under crimes defined as child abuse."), *available at* https://lancasteronline.com/news/local/bill-to-close-loophole-in-mandatory-reporting-law-on-ai-sex-abuse-material-moves-to/article_0e1cae40-fe05-46ff-b7fd-da2ee8c61739.html.

### B. The Court should dismiss, in part, the negligence claims in Counts VI and XII, and the NIED claims in Counts VII and XIV, because Plaintiffs allege a duty to report that does not exist as a matter of law.

Student Plaintiffs and Parent Plaintiffs each allege in their negligence claims and NIED claims that LCDS breached a duty of care by failing to report the Safe2Say tip "to law enforcement, ChildLine, or any other appropriate authority, as required by law and by reasonable institutional practice[.]" *See* Compl. at ¶¶ 65(e), 73(e), 104(e), 116(e). In so alleging, Plaintiffs infer a common law duty to report under the circumstances. No such duty exists as a matter of law, and, equally important, the facts as alleged in the Complaint reveal that law enforcement was aware of the tip all long.

To explain, an ordinary negligence claim based on an alleged duty to report cannot survive where the common law "duty" is predicated on a statutory regime that itself does not impose a report requirement. *See Nace v. Pennridge Sch. Dist.*, 744 F. App'x 58, 65-66 (3d Cir. 2018); *Lee v. Cnty. of Chester*, No. 24-cv-4180, 2025 WL 2350859, at *20 (E.D. Pa. Aug. 13, 2025) ("We must follow the guidance of our Court of Appeals and 'decline to impose ... a common law duty to further disclose [suspected child abuse] beyond the duty imposed by the [Child Protective Services Law].'" (citing and quoting *Nace*)).[5] Here, as discussed at length above, the facts

---

[5] As is relevant, the *Nace* Court stated:

> Here, the Pennsylvania legislature's imposition of a duty to report under specific circumstances in the CPSL reflects the legislature's judgment that the burden of reporting is outweighed by its benefits only where there is reasonable cause to suspect sexual abuse or sexual exploitation and where there are protections in place for innocent

alleged in the Complaint did not give rise to a mandatory report under the CPSL. *See supra* § II.A. Moreover, to the extent Plaintiffs are relying on the statutory Safe2Say Something Program as creating a duty to report, 24 P.S. §§ 13-1301-D to 13-1307-D, no such reporting duty exists and they have not identified one in the Complaint. Indeed, under the Safe2Say Program, a school entity is tasked only with receiving and responding to reports received from the Attorney General: there is no statutory mandate directing that school entities "shall" report to law enforcement. *Compare* 24 P.S. § 13-1303-D(d)(1) (provision of Safe2Say, stating: "Each school entity shall … [d]evelop procedures for assessing and responding to reports received from the program."), *with* 23 Pa.C.S. § 6311(a) (provision of the CPSL, stating: "The following adults *shall make a report* of suspected child abuse … if the person has reasonable cause to suspect that a child is a victim of child abuse" (emphasis added)).[6]

Furthermore, as noted at length in the introduction to this Brief, the face of the Complaint acknowledges that "law enforcement" was, in fact, notified of the Safe2Say tip. In fact, by Plaintiffs acknowledging that LCDS learned of W.D.'s misconduct from the Safe2Say Program, *see* Compl. at ¶¶ 19, 24-26, Plaintiffs admit a "law enforcement agency"—the Office of the Attorney General—was *the first* to

---

> accused employees. Under the circumstances, imposing a broader common law duty to report may disrupt the careful balancing of interests that the Pennsylvania legislature viewed to be proper.

744 F. App'x at 65-66 (internal citation and footnote omitted).

[6] The above quoted provision of the Safe2Say statute was amended by Act 47 of 2025 (effective January 12, 2026), after the events at issue in the Complaint.

learn of the tip. *See* 24 P.S. § 13-1302-D (definition of "Law enforcement agency" includes "the office"; definition of "Office" is the Office of Attorney General); 24 P.S. § 13-1303-D(b)(1) ("The Attorney general shall … administer the program"); 24 P.S. § 13-1303-D(c)(1) & (6) (requiring the program to be responsible for receiving tips and forwarding the tips to law enforcement agencies and school officials). Moreover, LCDS reported the results of its investigation back to the Attorney General, as statutorily required. 24 P.S. § 13-1303-D(c)(7), (11), (13) & (d)(2). Thus, the allegation that Pennsylvania law required LCDS to report to "law enforcement," and failed to do so, is untenable on the face of the Complaint.

In sum, therefore, because no common law duty exists to report as alleged in paragraphs 65(e), 73(e), 104(e), and 116(e) of the Complaint, Plaintiffs' negligence and NIED claims based on that alleged duty must be dismissed.

### C. The Court should dismiss the Title IX claim in Count IX because Student Plaintiffs have not pleaded LCDS had substantial control over the harassers and the context in which the sexual harassment occurred.

In Count IX, Student Plaintiffs assert a violation of Title IX based on student-on-student sexual harassment. *See* Compl. at ¶ 85. Such claims require a plaintiff to allege six elements, only the third of which is material to the present Motion:

> (1) the defendant receives federal funds; (2) sexual [or racial] harassment occurred; (3) *the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red],"* (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the

> victims of access to the educational opportunities or benefits provided by the school."

*Williams v. Pennridge Sch. Dist.*, No. 15-cv-4163, 2018 WL 6413314, at *6 (E.D. Pa. Dec. 6, 2018) (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644-45, 650 (1999)) (emphasis added), *aff'd*, 782 F. App'x 120 (3d Cir. 2019); *accord A.T. v. Oley Valley Sch. Dist.*, No. 17-cv-4983, 2018 WL 3046601, at *2 (E.D. Pa. June 20, 2018) (Schmehl, J.).[7] For the "substantial control" element, several courts have found afterhours and off campus harassment does ***not*** satisfy the student-plaintiff's Title IX burden. *See Williams*, 2018 WL 6413314, at *7 (collecting cases); *see also Vincent C. v. Pennsbury Sch. Dist.*, No. 24-cv-06340, 2025 WL 2524221, at *10 (E.D. Pa. Sept. 2, 2025) (citing *Williams*), *mot. for reconsideration pending*, Doc. 64 (E.D. Pa. Sept. 16, 2025)[8]; *Doe v. Univ. of Scranton*, No. 3:19-CV-01486, 2020 WL 5993766, at *8 n.98 (M.D. Pa. Oct. 9, 2020) (citing *Williams*). Examples of off campus conduct that courts have found inadequate to support a student-on-student harassment claim under Title IX include the following:

- calls to a student that occurred after school hours and off school premises, *Williams*, 2018 WL 6413314, at *7;
- meetings for sexual misconduct that occurred offsite and which were not arranged using defendant's computer equipment, *Vincent C.*, 2025 WL 2524221, at *10;

---

[7] This Court in *A.T.* identified the same considerations as *Williams* but condensed them into two elements: "(1) that the federally funded school acted with 'deliberate indifference to known acts of harassment in its program and activities' and (2) that such sexual harassment is so 'severe, pervasive, and objectively offensive' that it effectively prevents the victim from enjoying an educational opportunity or benefit." 2018 WL 3046601, at *2 (quoting *Davis*).

[8] The parties in *Vincent C.* consented to proceed before a U.S. Magistrate Judge. 2025 WL 2524221, at *1.

- harassment at off campus apartment, which was off hours and not related to any university event, *University of Scranton*, 2020 WL 5993766, at *8;

- social media harassment via Twitter and Facebook, which did not occur while plaintiff was attending the school, *M.S. v. Susquehanna Twp. Sch. Dist.*, No. 13-cv-02718, 2017 WL 6397827, at *10 (M.D. Pa. Mar. 29, 2017), *report and recommendation adopted*, 2017 WL 6403007 (M.D. Pa. Aug. 16, 2017), *aff'd*, 969 F.3d 120 (3d Cir. 2020)[9]; and

- acts by an offender against plaintiff that occurred outside of school, *Dawn L. v. Greater Johnstown Sch. Dist.*, 614 F. Supp. 2d 555, 568 n.3 (W.D. Pa. 2008).

The above list of examples contrast sharply with on-campus events that do give rise to liability, such as harassment and bullying that occurs while a student is attending classes and participating in school activities and sporting events. *See A.T.*, 2018 WL 3046601, at *3.

Applied here, Student Plaintiffs have not alleged facts showing the harassment by W.D. and N.S. occurred on-campus or during school hours such that they can plausibly show LCDS exercised substantial control over both the harassers and the context in which the known harassment occurred. Instead, what Student Plaintiffs allege is harassment via AI-generated images, created online, that W.D. and N.S. shared *with each other* online, without Student Plaintiffs' knowledge, via Discord: "[the images] were distributed *using internet services* including but not limited to Discord, again *without the victims' knowledge* or consent." *See* Compl. at

---

[9] In *M.S.*, the school repeatedly investigated rumors that a student and faculty member were in a relationship, but the school was unable to substantiate the rumors. Later, the rumors were proven true. Despite the unsuccessful investigations, the school did not bear Title IX liability because the evidence did not show deliberate indifference to the alleged harassment. *See* 2017 WL 6397827, at *2-4, 8.

¶ 22 (emphasis added); *see also* Compl. at ¶ 23 ("N.S. and W.D. then disseminated these 'deepfake' nude images *via the internet*." (emphasis added); *and see* Compl. at ¶¶ 1, 24, 29, 31.[10] The Complaint even states that Student Plaintiffs saw the images *for the first time* in late 2024, when police shared the images; in other words, the images were not shared in LCDS but in a police precinct. Compl. at ¶ 37.

What Student Plaintiffs do not allege, at any point in the Complaint, is that the images were shared in school, during school hours, or using school equipment or a school internet connection. The sole nexus to LCDS in the Complaint is that the Student Plaintiffs and the harassers were all students of the school, but that is not enough to survive a motion to dismiss. *Cf. Vincent C.*, 2025 WL 2524221, at *10 (granting motion to dismiss); *University of Scranton*, 2020 WL 5993766, at *9 (same). Further, Student Plaintiffs' Title IX claim is also legally deficient in that Count IX does not even contain a *legal* allegation that LCDS had substantial control, the *only* legal element of the six described in *Williams* that Plaintiffs did not aver. *Cf.* Compl. at ¶¶ 82-90. For all the foregoing reasons, the Title IX claim as pleaded fails to state a claim.

Therefore, the Court should dismiss the Title IX claim in Count IX.

---

[10] Student Plaintiffs believe, based on no disclosed allegations, that the images may have been otherwise distributed beyond W.D. and N.S., alleging as such "upon information and belief." *See* Compl. at ¶ 31.

### D. The Court should dismiss Count X under 18 U.S.C. § 2255 because Plaintiffs have not alleged a legal or factual theory for liability against LCDS.

Section 2255 provides a civil cause of action to a person who, while a minor, was the victim of a violation of certain predicate criminal statutes, enumerated therein. 18 U.S.C. § 2255(a). Student Plaintiffs allege they were harmed by a violation of 18 U.S.C. § 2252A, one of the specified crimes in Section 2255. *See* Compl. at ¶¶ 55, 92. In general, Section 2252A criminalizes the production, possession, distribution, and receipt of child pornography. *See* 18 U.S.C. § 2252A; *accord* Compl. at ¶ 92 (similarly describing Section 2252A). Student Plaintiffs' claims against LCDS in Count X under Section 2255 fail for each of the following *four* reasons.[11]

*First*, Student Plaintiffs have not alleged LCDS itself violated Section 2252A, the criminal statute on which they rely. *See* Compl. at ¶ 92. Civil liability under Section 2255 extends to a defendant who violated the predicate statute (and as argued below, extends *only* to that defendant). *See Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007). In the Complaint, Student Plaintiffs allege that W.D. and N.S. violated Section 2252A, but *do not* allege LCDS violated it. *Compare* Compl. at ¶ 55 ("N.S. and W.D. violated 18 U.S.C. § 2252A ..."), *with* Compl. at ¶¶ 92-95 (containing no allegations of conduct by LCDS). Hence, insofar as Student

---

[11] Student Plaintiffs' theory of liability against LCDS under Section 2255 is not clear; hence, the four reasons set forth here reflect rebuttals to arguments that plaintiffs in similar matters have raised, rather than theories specifically pleaded by Student Plaintiffs.

Plaintiffs intended to bring a *direct* claim against LCDS under Section 2255, they have failed to plead any facts supporting such a claim.

*Second*, Section 2255 does not permit secondary liability, thus LCDS cannot be liable under an aiding and abetting theory as a matter of law. In full candor, caselaw on this legal issue is split. District courts in the Third Circuit have recognized the potential for civil liability under Section 2255 where the plaintiff's theory is that the defendant aided and abetted a violation of one of the predicate criminal statutes within Section 2255. *See Liberatore*, 478 F. Supp. 2d at 756; *Doe v. Schneider*, No. 08-cv-3805, 2013 WL 5429229, at *10 (E.D. Pa. Sept. 30, 2013) (citing *Liberatore*). But more recently, district courts in other circuits have rejected this theory, and *Liberatore* specifically, holding Supreme Court precedent precludes civil liability under an aiding and abetting theory absent express language in Section 2255 supporting such secondary liability. *See Mandal v. Daskal*, No. 23-cv-7352, 2025 WL 2452362, at *4 (E.D.N.Y. Aug. 25, 2025); *Doe 9 v. Varsity Brands, LLC*, 679 F. Supp. 3d 464, 481 (D.S.C. 2023); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013). The undersigned has been unable to locate an opinion of the Third Circuit definitively resolving this legal issue. In the absence of that authority, under the logic of *Mandal*, *Doe 9*, and *Jean-Charles*, LCDS submits that civil liability does not arise under Section 2255 under an aiding and abetting theory as a matter of law, and thus LCDS cannot be liable to the Student Plaintiffs.

*Third*, even if Section 2255 supports secondary liability under an aiding and abetting theory, Student Plaintiffs have failed to plead sufficient facts supporting

the elements of that theory. A plaintiff advancing such a theory must allege facts showing that the Section 2255 civil defendant aided and abetted the primary actor's criminal misconduct. *See Liberatore*, 478 F. Supp. 2d at 756-57. To do so, the plaintiff must demonstrate three elements: "(1) the substantive offense has been committed; (2) the defendant knew the offense was being committed; and (3) the defendant acted with the intent to facilitate it." *Id.* at 756. A complaint failing to plead facts supporting these elements must be dismissed under Rule 12(b)(6). *See M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054 (E.D. Mo. 2011) (citing *Liberatore*); *see generally Schneider*, 2013 WL 5429229, at *10 (granting summary judgment where plaintiff failed to present evidence of defendants' assistance in carrying out the offense or that they had the requisite intent); *Liberatore*, 478 F. Supp. 3d at 756-57 (granting summary judgment where plaintiff failed to produce evidence that defendants knew of the offenses, had the requisite intent, or actively participated in the offenses). Applied here, Student Plaintiffs have failed to plead facts to support an aiding and abetting theory. For starters, Student Plaintiffs only expressly pleaded that N.S. "aided and abetted" W.D., *see* Compl. at ¶ 22, no such allegation exists as to LCDS. Further, at no point does the Complaint allege LCDS actively participated in the offenses or intended for those offenses to occur. This is fatal to the Section 2255 claim.

*Fourth*, and finally, insofar as Student Plaintiffs intended to plead a claim against LCDS based on vicarious liability, they have also failed to plead facts supporting such a claim. At least one court has recognized the possibility that a

Section 2255 plaintiff can allege liability under a vicarious liability theory. *See Doe 9*, 679 F. Supp. 3d at 480. That said, a plaintiff advancing such a theory must, in general, allege facts showing an agency relationship between the wrongdoer and the Section 2255 defendant. *See id.* at 480-81. Here, Student Plaintiffs have not pleaded, factually or legally, that LCDS was in an agency relationship with W.D. and N.S.; instead, Student Plaintiffs plead only an agency relationship between LCDS and its various teachers and administrators. *See Compl.* at ¶ 8. Thus, Student Plaintiffs' claim against LCDS under Section 2255 fails for this additional reason.

Thus, the claim against LCDS in Count X should be dismissed.

## III. CONCLUSION

Therefore, Defendant LCDS respectfully requests that the Court grant its Motion to Dismiss and enter an Order providing as follows:

1. Counts VI, VII, XII, & XIV are dismissed only as to the claims set forth in Paragraphs 65(e), 73(e), 104(e), and 116(e) of the Complaint;

2. Counts VIII, IX, & XIII are dismissed; and

3. Count X, only as against Lancaster Country Day School, is dismissed.

Respectfully submitted,

Date: July 27, 2026

/s/ Rory O. Connaughton
Ronald H. Pollock, Jr. (No. 52586)
Rory O. Connaughton (No. 78775)
Joshua J. Voss (No. 306853)
SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
P: 717-556-1000 | F: 717-441-3810
rhp@saxtonstump.com
rconnaughton@saxtonstump.com
jvoss@saxtonstump.com

*Counsel for Lancaster Country Day School*

## CERTIFICATE OF SERVICE

I hereby certify that I caused Lancaster Country Day School's Motion to Dismiss and Brief in Support to be electronically filed on the date listed below through the Court's CM/ECF system and that the documents are available for viewing and download from the Court's CM/ECF system.

Date: July 27, 2026

/s/ Rory O. Connaughton

Rory O. Connaughton (No. 78775)
SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
P: 717-556-1000 | F: 717-441-3810
rconnaughton@saxtonstump.com

*Counsel for Lancaster Country Day School*